**In the Interest of PATRICIA S.**

**Appeal of Patricia RYAN, Foster Mother.**

Superior Court of Pennsylvania.

Argued Feb. 22, 1983.

Filed April 6, 1984.

Arnold H. Cantor, Pittsburgh, for appellant.

Mark P. Cancilla, Pittsburgh, for appellee.

James A. Esler, Assistant County Solicitor, for participating party.

Before SPAETH, BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

The threshold question before us in this appeal is whether, after notice of intent to adopt has been filed, the Orphans' Court Division of the Court of Common Pleas has exclusive jurisdiction to determine the custody of a minor child who is the subject of the adoption proceeding. We conclude that under the circumstances present in this case the Orphans' Court did not have exclusive power to determine the custody question. We further conclude that the custody order entered below should be affirmed.

Patricia Marie (Patty), the child who is the subject of these proceedings, was born on December 19, 1979 out of wedlock. On February 20, 1980 Patty was adjudicated dependent, having been diagnosed as a "failure to thrive" [1] baby. The lower court explained in its opinion that at the time Patty was adjudicated dependent she was placed in the

---

1. As the lower court noted in its opinion:
   Failure to thrive is a serious medical condition in which a child's height, weight, and motor development fall significantly short of the average growth rates of normal children. About 10% of failure to thrive cases have an organic cause; the rest result from disturbed parent-child relationships manifested in severe physical and emotional neglect of the child. *Interdisciplinary Glossary On Child Abuse And Neglect*, LEGAL, MEDICAL, SOCIAL WORK TERMS, DHEW Pub. No. (OHDS) 78–30137, *reprinted in* CHILD ABUSE AND NEGLECT LITIGATION, DHHS Pub. No. (OHDS) 80–30268 (March 1981).

Parental Stress Center program, which is sponsored by Children's Hospital of Pittsburgh. A child who participates in the program lives in residential placement under the care of a professional staff. The parents visit daily and undergo supervision and parental training.

The court said in its opinion that it was contemplated that Patty would be returned to the custody of her parents following their successful completion of the program. Unfortunately, Patty's parents did not complete the program and on June 25, 1980 Patty was placed in the custody of appellant under the supervision of Children and Youth Services of Allegheny County (CYS).

On December 23, 1981 Patty's father petitioned the Court to return custody to him.[2]

A hearing on the father's petition was held on January 13, 1982 following which the court issued an order extending review of the case to May 5, 1982 and directing that a CYS plan to return Patty to the custody of her father and his wife was to be implemented forthwith.

The CYS plan apparently provided that Patty's father was to visit with his daughter. The foster mother requested the court to modify the plan to provide for more gradual contact saying that the plan called for too much contact too soon. That request was denied by Order of March 10, 1982.

On April 28, 1982 appellant filed a petition in the lower court in which she averred that she had commenced adoption proceedings concerning Patty in the Orphans' Court Division of the Court of Common Pleas of Allegheny County. Appellant then argued that because adoption proceedings were pending, the Orphans' Court had exclusive jurisdiction over Patty's custody.

Appellant petitioned the lower court to continue the case pending completion of the adoption proceedings. The lower

2. The natural mother is not a party to this action.

court denied her petition and on May 5, 1982 ordered that Patty be placed in the custody of her father and stepmother. This appeal followed.

Appellant bases her argument that the Orphans' Court has exclusive jurisdiction to determine Patty's custody on the terms of 20 Pa.C.S. § 711(8). 20 Pa.C.S. § 711(8) states:

Except as provided in section 712 of this code (relating to nonmandatory exercise of jurisdiction through orphans' court division) and section 713 of this code (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

(8) Custody of minors. The determination of the right to the custody of a minor in connection with any proceeding for his adoption or for the appointment of a guardian of his person, except as provided in section 713 of this code.

We interpret this statute as the lower court did: it grants jurisdiction over custody matters to the Orphans' Court Division within the context of an adoption proceeding. The custody order in this case, on the other hand, was entered in connection with the dependency proceeding that was commenced in the Juvenile Court Division in 1980. See 42 Pa.C.S. § 6303(a)(1); § 6351 as to the power of the Juvenile Court to enter custody orders in connection with dependency proceedings.

Appellant urges us, though, to find that certain decisions of our Supreme Court require that only the Orphans' Court Division exercise jurisdiction over the instant custody matter.

Appellant cites to us *Adoption of Snellgrose*, 425 Pa. 258, 228 A.2d 764 (1967) as support for her theory. In that case an adoption petition was filed by a couple with whom the child resided. Following the institution of the adoption action in the Orphans' Court, the child's mother filed in the Court of Common Pleas a petition for writ of habeas corpus

in order to obtain custody of her child. One judge took evidence in both cases, sitting as a judge on both the Orphans' Court and the Court of Common Pleas. Our Supreme Court held that where an adoption proceeding is pending before the Orphans' Court,[3] a habeas corpus action to determine custody is under the exclusive jurisdiction of the Orphans' Court, and if such a proceeding is brought in the Court of Common Pleas, it must either be dismissed or transferred to the Orphans' Court.

The facts of the present case, are quite the reverse of those present in *Snellgrose* in that the adoption proceedings in the instant case were instituted *after* a dependency proceeding was commenced in the Juvenile Court.

*Snellgrose* does not control this case. Nor do we find persuasive the other authority cited by appellant. See e.g. *Adoption of Ashton*, 374 Pa. 185, 97 A.2d 368 (1953) (as in *Snellgrose*, the adoption proceeding was pending when a habeas corpus petition was filed.) To the same effect see *Commonwealth v. White*, 403 Pa. 55, 169 A.2d 69 (1961).

Contrary to appellant's reading of *Snellgrose* and related cases, we would gather from those decisions that a party cannot divest one court (or here one division of a court) of jurisdiction over a matter, simply by filing another action.

On the other hand, we note that in *Doyles' Estate*, 291 Pa. 263, 267, 139 A. 829 (1927) our Supreme Court stated, ... "[W]here two actions are brought, as here, in different courts, the one which first acquires control of the controversy will retain it to the exclusion of the other." In *Doyles' Estate* a partition petition was initially presented to the Orphans' Court. However, one of the parties in interest was not named and the party subsequently initiated an equity proceeding in which she sought partition. The argument was advanced that because the petition filed in Or-

---

**3.** At the time *Snellgrose* was decided the Orphans' Court was a separate court, rather than, as it is now, a division of the Court of Common Pleas.

phans' Court failed to name a party, it was a nullity and that the Common Pleas Court therefore had jurisdiction over the equity action. The court rejected this argument, affirmed that jurisdiction lay in the Orphans' Court and noted 291 Pa. at 268, 139 A. 829, "It [Orphans' Court] had the power to proceed and settle the controversy, if it could properly add the appellant as a party, notwithstanding the attempted litigation subsequently instituted in a court of concurrent jurisdiction." (citation omitted).

See also *First National Bank of New Wilmington v. Getty*, 118 Pa.Super. 326, 179 A. 764 (1935).

We conclude that the jurisdiction of the Juvenile Court Division of the Court of Common Pleas over the instant case was not ousted by the filing of a Notice of Intent to Adopt in the Orphans' Court Division of that Court.

Aside from the lack of precedent supporting appellant's position, and the existence of what we find authority compelling the decision we reach, we note that if we were to decide the case as appellant urges, we would do real damage to the operation of the Juvenile Court and the laws it administers. This action began in Juvenile Court with the aim of reuniting Patty with her father. Only a few weeks before that contemplated result was to be achieved appellant sought to derail the proceedings. We cannot permit attempts like that made in this case to interfere with an ongoing proceeding.

In this regard we believe that the lower court correctly determined that custody of Patty should be returned to her father. The court carefully considered the testimony, expert and lay, and quite adequately explained its decision in its opinion. We need comment no further on the decision to return Patty to her father.

We, therefore, affirm the order.